[No. 28476. Department Two. December 2, 1941.]

BICKFORD BRIGGS, *Respondent,* v. UNITED FRUIT & PRODUCE, INC., *Appellant.*[1]

[1]Reported in 119 P. (2d) 687.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for appellant.

*Cheney & Hutcheson, John Gavin,* and *Wendell W. Duncan,* for respondent.

BEALS, J.—Plaintiff, Bickford Briggs, sued the defendant for damages as the result of injuries which he received when struck by defendant's truck and trailer, while plaintiff was riding a bicycle along a street in the city of Yakima. At the time of the trial, plaintiff, who is five feet in height and weighs one hundred thirteen pounds, was thirty-seven years of age. At about twelve-thirty o'clock on the morning of Monday, July 22, 1940, plaintiff, who had spent Sunday with friends in Yakima, was riding south along First street south, the main north and south highway toward the southerly part of the county. The accident occurred within the city limits, where the highway is forty-four feet in width, and perfectly straight.

The center of the street is marked with a yellow line. On each side of the center line for ten feet the highway is paved with dark asphalt, and on each side of the asphalt is a twelve foot strip of concrete, making a total paved surface forty-four feet in width. At and near the scene of the accident, the shoulders of the road are eighteen feet wide, scattered with gravel.

Plaintiff was riding an ordinary bicycle, which carried an electric headlight operated from dry cell batteries, the light casting a beam a distance forty feet or so in front of the bicycle, and at the end of the beam approximately twelve feet in width. A red glass reflector, such as bicycles usually carry, was attached to the rear fender of the bicycle, and attached to the back of plaintiff's hat was a larger red glass reflector, which was so placed that it was visible to traffic approaching from the rear.

A large International truck and trailer, fifty and one-half feet long and seven feet wide, weighing nine and one-half tons, was proceeding south along the highway, in charge of Fred Fahrenholz as driver, and Russell S. Loar as helper. The truck had a flat bed body with side racks, and carried no load. The driver testified that the truck was in first class condition, that its brakes were working well, and the lights functioning perfectly. The lights were tilted down. The driver testified that he could see from eighty to one hundred feet ahead of the truck, the lights illuminating a strip approximately fourteen feet wide. The driver testified that he was maintaining a constant lookout ahead, but both he and Loar testified that they did not see the plaintiff, and did not know that they had struck him until they heard a sound which indicated that the left side of the truck or trailer had struck some object. The driver then stopped the truck, pulling it over on the right-hand shoulder of the roadway, and upon investigation they discovered that the truck had struck

plaintiff, throwing him to the pavement and inflicting upon him very serious injuries. It is admitted that the truck passed plaintiff on his right, and that the left side of the truck collided with the right side of plaintiff's bicycle.

Plaintiff suffered a concussion of the brain, a badly lacerated scalp, eight fractured ribs, and other serious injuries. He remained in the hospital for two and one-half months, and is permanently disabled. He stated that he was proceeding south on the highway, on a straight course, his bicycle being, as he estimated the distance, six feet from the westerly edge of the concrete or outer portion of the pavement. He was not proceeding closer to the edge of the pavement because some gravel had worked over the pavement from the shoulder of the road, rendering difficult the operation of his bicycle on that portion of the highway. He testified that he had no recollection whatever of the accident itself, or how or where he had collided with the truck. It is admitted that both the truck and the bicycle were proceeding on the westerly half of the highway.

There were two eyewitnesses to the accident, Joseph and Kenneth Potter, who were proceeding in their automobile in a northerly direction along the highway. These witnesses observed both plaintiff's bicycle and defendant's truck approaching, the collision having occurred at about the instant their automobile passed the truck. They stopped as soon as possible and returned to the scene of the accident. Joseph Potter testified that the truck was traveling on the easterly portion of the concrete strip of the westerly half of the highway, at approximately thirty-five miles per hour, while the bicycle was traveling on the asphalt a foot or two east of the line where the asphalt and the concrete joined. He testified that the bicycle's headlight was functioning, and that while at a considerable

distance he saw the form of a man riding the bicycle. The truck proceeded to pass the bicycle on the latter's right, and when the bicycle was even with the rear of the truck, he saw the bicycle thrown violently to the pavement.

Kenneth Potter testified that he first saw the truck when about a block distant; that he saw the truck approach, overtake, and pass plaintiff's bicycle, when he saw the bicycle thrown to the pavement. He also stated that the bicycle was traveling on the asphalt in a perfectly straight line less than a foot east of the dividing line between the asphalt and the concrete, while the truck was proceeding along the concrete lane rather closer to the asphalt than to the outer edge of the pavement. He agreed with his brother in stating that the truck was traveling at about thirty-five miles per hour.

Another witness who did not see the accident testified that he heard the application of the air brakes on the truck, and observed the truck at that time, estimating its then speed at approximately thirty miles per hour.

The witness Gerald J. Morrison, a member of the police force of the city of Yakima, testified that he arrived at the scene of the accident a short time after it occurred. He stated that plaintiff's bicycle was taken to the station, where it was ascertained that the light would still function; that he found plaintiff's hat at the scene of the accident, the red reflector being still attached thereto. He stated that the truck was parked at a point four hundred feet or so south of the scene of the collision, and that on the left side of the body of the truck was a stout three-quarter inch rope, eighteen feet long, the ends of the rope being attached to the two top corners of the truck body, the rope hanging in an arc, the lowest portion of which was three feet from the ground. The officer also testified

that he discovered a glove caught in the rope. This glove was introduced in evidence at the trial, and was identified as being the left-hand glove which plaintiff was wearing at the time of the accident.

By an ordinance of the city of Yakima, twenty-five miles an hour was fixed as the speed limit for vehicles.

Rem. Rev. Stat., Vol. 7A, § 6360-20 [P. C. § 2696-804], reads as follows:

"During hours of darkness every bicycle shall be equipped with one lamp on the front exhibiting a white light visible from a distance of at least five hundred (500) feet to the front and with a lamp on the rear exhibiting a red light visible from a distance of five hundred (500) feet to the rear; excepting that a red reflector meeting the requirements of this act may be used in lieu of a rear light."

An ordinance of the city of Yakima relating to the operation of bicycles along the city streets provides that bicycles shall be operated as near the right-hand edge of the pavement as practicable.

The severity of plaintiff's injuries is not denied. Defendant denied all negligence on its part, and pleaded contributory negligence on the part of plaintiff. The issues having been made up, the action was tried to the jury, which returned a verdict in plaintiff's favor. The court having denied defendant's motion for judgment in its favor notwithstanding the verdict, entered judgment on the verdict against defendant, from which judgment defendant has appealed.

Error is assigned upon the overruling of appellant's challenge to the sufficiency of the evidence made at the close of respondent's case; on the overruling of appellant's motion for a directed verdict; and upon the overruling of appellant's motion for judgment in its favor notwithstanding the verdict, or in the alternative for a new trial. Error is also assigned upon the admission of certain testimony offered by respondent, and

received over appellant's objection, concerning an experiment made with the object of ascertaining the distance at which the bicycle could be observed from the rear, under conditions supposed to be approximating those existing at the time of the accident. Appellant also complains of three of the court's instructions, to which exceptions were preserved.

Respondent has moved to dismiss the appeal, basing his motion upon delay in filing appellant's transcript of the record, abstract, and brief. The motion is without merit, and is denied.

It is not disputed that respondent and appellant's truck and trailer were both proceeding south along the highway, that the truck attempted to pass respondent on the latter's right, and that respondent's bicycle and the truck made contact at some point on the left side of the truck, with the result that respondent was thrown to the pavement and severely injured. Appellant's driver and his assistant testified that they did not see respondent, and as the truck proceeded to pass respondent on his right, the driver gave no warning signal. The pavement was dry, the night was clear, and visibility was good. These witnesses testified that the truck was proceeding at twenty to twenty-five miles per hour. Appellant argues that respondent was in two respects violating positive law: First, by maintaining his course at some distance in from the westerly margin of the pavement; and second, by maintaining a reflector upon the rear of his bicycle which was not visible from a point five hundred feet distant, but could be seen only a distance of four hundred feet.

Appellant argues that, because respondent was violating two positive statutes, it should be held, as matter of law, that respondent was guilty of contributory negligence. Under the evidence, the reflector on re-

spondent's bicycle was visible at night from a point four hundred feet to its rear, when within the range of automobile lights in normal position, and two hundred feet when the lights were deflected downward. How far the reflector which was attached to respondent's hat could be seen, does not appear. Appellant's driver testified that the truck's lights illuminated the roadway approximately one hundred feet ahead of the truck, and that he did not see respondent at all until after the accident. Under these circumstances, the fact that the reflector on respondent's bicycle could not be seen for a distance greater than four hundred feet was entirely immaterial, and had nothing whatever to do with the accident.

In the case of *Beckstein v. Sayler*, 93 Ind. App. 686, 179 N. E. 581, it appeared that one riding a bicycle at night was struck by the defendant's automobile and killed. It was contended that the bicycle was not equipped with a red reflector, as required by law. In an action to recover damages for the death of the bicycle rider, it was held that the trial court had not erred in denying the defendant's motion for a directed verdict, and referring to the matter of the reflector, the court said:

"Before such negligence will defeat a recovery it must be shown to be the proximate cause of the injury complained of or that it proximately contributed thereto."

As to the ordinance of the city of Yakima above referred to, it simply provides that a bicycle rider shall maintain his position as near the right-hand edge of the roadway as is practicable. Respondent testified that gravel and stones were scattered over the right-hand portion of the concrete pavement. Such a condition would render bicycle riding difficult, if not dangerous, and whether under the ordinance respond-

ent was guilty of negligence in riding wherever the jury believed he was riding, and whether such negligence proximately contributed to the accident, was for the jury to determine.

In the recent case of *Fosdick v. Middendorf,* 9 Wn. (2d) 616, 115 P. (2d) 679, an action for damages as the result of a collision between two automobiles, this court said:

"It will be observed that the statute says that the vehicle must be driven as close 'as is practicable to the extreme right-hand edge of said roadway.' The evidence shows, and is not in dispute, that, in order to make the acute turn, it was necessary to swing to the left to some extent. It follows from this that it was not practicable to keep the Chevrolet close to the right-hand·edge of the pavement. There was, therefore, no violation of this provision in the statute, and cases cited holding that a thing done in violation of positive law is in itself negligence, have no application."

It cannot be held as matter of law that respondent was guilty of contributory negligence.

The record contains evidence to the effect that appellant's truck was being operated at a speed of from thirty to thirty-five miles per hour, although an ordinance of the city of Yakima limited the speed of an automobile at the place of the accident to twenty-five miles per hour. The jury were entitled to believe this evidence, and that appellant's driver was, at·the time and place of the accident, driving at a speed greater than that allowed by law.

It is admitted that respondent was propelling his bicycle south along the street upon which the truck was proceeding, and appellant's driver testified that, although he was maintaining a careful lookout ahead, he did not see appellant until after the accident. The driver testified that his lights were in good order, and that his brakes were functioning perfectly. Ap-

pellant's other employee, who was sitting beside the driver, testified that he did not see respondent, stating that at the time of the accident he had not been closely regarding the road.

Respondent was proceeding on his right half of the highway, and was entitled to believe that other persons using the highway would use it with due regard to respondent's safety, would not undertake to pass him upon his right, at least without warning, and would, by sound of horn, advise him of approaching danger. *Hadley v. Simpson*, 9 Wn. (2d) 541, 115 P. (2d) 675. The driver of appellant's truck did not see respondent, although according to the evidence, respondent was proceeding along the highway in front of the truck and slightly to the driver's left.

In the case of *American Products Co. v. Villwock*, 7 Wn. (2d) 246, 109 P. (2d) 570, we had occasion to restate an old principle of law, as follows:

"A challenge to the sufficiency of the evidence admits the truth of plaintiff's (or cross-complainant's) evidence and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the defendant (or cross-defendant) and in the light most favorable to plaintiff (or cross-complainant). *Beck v. Dye*, 200 Wash. 1, 92 P. (2d) 1113; *Rice v. Garl*, 2 Wn. (2d) 403, 98 P. (2d) 301; *Lindberg v. Steele*, 5 Wn. (2d) 54, 104 P. (2d) 940."

Appellant argues that the jury's verdict could only be based upon speculation as to the exact cause of the accident. The trial court instructed the jury that if they were "unable to determine from the evidence the cause of the accident complained of," their verdict should be in favor of the defendant.

In the case of *St. Germain v. Potlatch Lumber Co.*, 76 Wash. 102, 135 Pac. 804, in which an accident which

had caused the death of a railroad workman was the subject matter of litigation, this court said:

"While it is a sound rule that to sustain a finding that the appellant's negligence was the proximate cause of the injury, the evidence must present something more than a mere possibility or conjecture, it is equally sound that the cause of an accident may be inferred from circumstances. A plaintiff in this character of case is not obligated to establish the material facts essential to a recovery beyond a reasonable doubt. Such a rule would amount to a denial of justice. It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the accident causing the injury happened in such a way as to fix liability upon the person charged with such liability, than it is that it happened in a way for which the person so charged would not be liable."

In the recent case of *Allen v. Washington Nat. Ins. Co.,* 9 Wn. (2d) 563, 115 P. (2d) 685, an action upon a policy of accident insurance, the exact manner in which the accident occurred, which caused the death of the insured, could not be definitely determined from the evidence. In affirming the judgment against the insurer, this court said:

"The accident was of an unusual kind, and the exact cause and manner of its occurrence are not definitely known. No one witnessed the tragedy in its entirety, and no one observed Mrs. Allen during the course of the particular event until, at its conclusion, she was found lying mortally injured by the side of the automobile. . . .

"It is true that no one saw Mrs. Allen at, or immediately prior to, the time when she sustained her injuries, and that no one could testify positively as to what caused the accident, or how it came about. . . .

"Respondent was not required to prove the cause of the accident by direct evidence alone. He could resort, as he was compelled to do in this instance, to circumstantial evidence; that is, to proof of facts which, though not in themselves conclusively establishing the

fact in issue, would nevertheless tend to establish it by affording a satisfactory inference of its existence, according to the reasoning and common experience of mankind. Furthermore, as to the amount or degree of proof necessary, respondent was not required to prove beyond a reasonable doubt, but only by a pre-ponderance of the evidence, the material facts essential to a recovery. The evidence would be sufficient if it afforded a basis for reasonable minds to conclude that there was a greater probability that the accident was caused in such a manner as would create liability on the part of the person from whom recovery was sought, than that it was caused in a manner from which no such liability would flow."

In the case cited, the appellant insurer contended that the verdict of the jury was not based upon facts established by a preponderance of the evidence, but was based only upon conjecture and speculation as to the cause and manner of the insured's death. In summing up the case, we said:

"Viewing the evidence in the light of these principles, we are of the opinion that the jury was clearly warranted in finding from the evidence, as its verdict indicated that it did find, that there was a greater probability that the accident causing the injuries and death occurred while Mrs. Allen was riding as a driver of, or passenger in, the automobile, than that it occurred while she was elsewhere than in the vehicle."

The verdict of the jury in favor of respondent, and the judgment entered on the verdict against appellant, are supported by the record, and the trial court did not err in overruling appellant's motions, first, for a directed verdict, and then for judgment in its favor notwithstanding the verdict.

Respondent testified by way of deposition before the trial, then stating that appellant's truck had passed him on his left-hand side. At the trial, respondent testified that he did not know which side of the truck collided with him; that he did not see or hear the

truck; and that he knew nothing about the manner in which the accident occurred. He also testified, as above stated, that he was riding his bicycle in a straight line, approximately six feet from the westerly edge of the pavement. The record shows that respondent was very severely injured as the result of the accident. He explained that he had believed that he was struck on the left side, because most of the injuries which he received were on the left side of his body. The confusion in respondent's testimony was for the jury to consider with all the rest of the evidence in the case, and need not be further noticed.

█ Appellant contends that the trial court improperly admitted, over its objection, evidence given by a police officer of the city of Yakima, concerning a test which he made shortly before the trial, as the result of which the officer testified that, under the high beam of the lights from an ordinary automobile, the reflector on respondent's bicycle could be seen from a distance of four hundred feet, and under the down beam, was visible at two hundred feet. It appears that, at the time of the test, the weather conditions were similar to those of the night of the accident, with the exception that snow had fallen on the afternoon of the test, which had, however, been removed from the highway to the side of the road. It also appeared that prior to the test the red reflector on the bicycle had been cleaned, and that during the test the bicycle was placed upon the concrete portion of the highway, instead of upon the strip of dark asphalt.

It is argued that the presence of snow upon the ground at the side of the highway tended to make the visibility greater than at the time of the accident. There was no moonlight, and while the presence of snow might have a tendency to reflect starlight or any light in the atmosphere, it does not appear that it would

greatly increase the visibility, and it would seem that it would have little effect upon the visibility of the reflection from the lights of an automobile shining on the reflector. In the case at bar, the presence of the usual type of red reflector on the bicycle was admitted. The moving bicycle and rider, the visibility being good, would normally be seen by the driver of an automobile, aided by good lights, before the car would reach or pass the bicycle moving in the same direction, but appellant's driver testified positively that he did not see respondent at any time until after the accident.

Evidence concerning such tests as that now under discussion should be admitted with care, and only when it appears that the conditions under which the test was made and all the surrounding circumstances are reasonably comparable to the situation concerning which the test is supposed to be of assistance to the trier of the facts. If, however, it appear that the experiment substantially reproduces the original situation, any slight departure therefrom goes to the weight, rather than the admissibility, of the evidence.

In the recent case of *American Products Co. v. Villwock, supra,* an experiment had been made prior to the trial, for the purpose of demonstrating that a bicycle and rider on the night of the accident were visible at a certain distance. At the trial, evidence concerning the test was admitted over objection, and on the appeal, the admission of the evidence was assigned as error. Concerning this phase of the case, we said:

"Furthermore, matters of this kind rest largely in the discretion of the trial court, and are reviewable only for abuse of sound judicial discretion. *Halverson v. Seattle Electric Co.,* 35 Wash. 600, 77 Pac. 1058; *Truva v. Goodyear Tire & Rubber Co.,* 124 Wash. 445, 214 Pac. 818; *Washington v. Seattle,* 170 Wash. 371, 16 P. (2d) 597, 86 A. L. R. 113; and, as we have also

held, the exercise of such discretion will, on appeal, be viewed somewhat more critically when such evidence is rejected than when it is received. *Amsbary v. Grays Harbor R. & Light Co.,* 78 Wash. 379, 139 Pac. 46, 8 A. L. R. 1."

It was held that the trial court did not err in admitting evidence of the test.

In the early case of *Lasityr v. Olympia,* 61 Wash. 651, 112 Pac. 752, this court, in holding that the trial court did not err in rejecting offered evidence concerning certain experiments, called attention to the fact that "the trial court is necessarily vested with a large discretion in determining the preliminary questions of fact upon which" the admissibility of such evidence depends.

We are convinced that, under the facts in the case at bar, it cannot be held that, in admitting the testimony of the police officer above referred to, the trial court committed reversible error.

The trial court instructed the jury as follows:

"You are instructed that a bicycle is a recognized and lawful means of conveyance upon the streets of the city of Yakima and the highways of the state of Washington, and that the operator of a bicycle is entitled to the same rights and privileges and is subject to the same liabilities as the operator of an automobile, truck or other vehicle. In this case, therefore, the plaintiff, who was riding a bicycle, is not to be penalized by reason of that fact and he is entitled to receive from you the same consideration that you would give to the driver of an automobile, truck or other vehicle under the same or similar conditions."

Appellant excepted to the foregoing instruction, upon the ground that, in view of previous instructions of the court, it was unnecessary, was argumentative in its nature, called undue attention to the rights of respondent, and amounted to a comment on the evidence.

The trial court had previously instructed the jury

that a bicycle was a vehicle, and in other instructions had referred to respondent's bicycle and appellant's truck as comparable vehicles in the use of the highway. Consideration of the other instructions given by the court convinces us that, in the instruction complained of, the court did not unduly stress respondent's rights, but stated fairly and in plain language the law as applicable to the questions to be determined by the jury. The instruction does not amount to a comment on the evidence, nor is it argumentative.

In the case of *Curtis v. Perry*, 171 Wash. 542, 18 P. (2d) 840, the matter of a collision between an automobile and a motorcycle was considered, and it was held that an instruction that a motorcycle is a lawful vehicle, and that its rights on the highway are the same as those of an automobile, was proper.

Appellant also excepted to instruction No. 19, which reads as follows:

"You are instructed that the operator of the defendant's truck cannot be heard to say that he looked and did not see that which he could have seen by the exercise of reasonable care had he looked, the situation in law being the same, and his duties and responsibilities being the same under such circumstances as if he had looked and had actually seen that which he could have seen."

Appellant, while admitting that the rule of law embodied in the instruction is correct, as an academic proposition, contends that, in view of the evidence in the case at bar, the instruction was improper, and constitutes reversible error. Appellant argues that the record contains no evidence that its driver did not look, and that there is evidence in the record that respondent's bicycle was not in the position on the highway which it should have been occupying, and that it was not properly equipped with appliances to give warn-

482

ing of its presence on the highway. Appellant quotes from the case of *Roederer's Admx. v. Gray*, 253 Ky. 669, 69 S. W. (2d) 998, the following:

"Clearly a motorist has a right to assume that the operator of every vehicle on the highway has complied with the statute, and, if he looks up the road and sees no red light, to proceed on the assumption that no vehicle is immediately in front of him until it becomes reasonably apparent from his own lights or other means that such is not the case."

It may be assumed that the quotation from the Kentucky case correctly states the law, but, as above stated, the fact that the reflector on respondent's bicycle was not visible for the full statutory distance of five hundred feet might well be no excuse for the failure of appellant's driver to see respondent and his bicycle before attempting to pass the same on respondent's right, and giving some warning of the truck's approach and its position on the highway. We find no error in the instruction as given.

Finally, appellant contends that the trial court erred in giving its instruction No. 21, as follows:

"You are instructed that the plaintiff in propelling his bicycle along the street in question had a right to assume that the driver of the defendant's truck would be driving said truck in a lawful manner and would exercise reasonable care in sounding his horn if said truck was approaching a condition of danger, and the plaintiff had a right to indulge in said presumption until he knew, or in the exercise of ordinary care should have known to the contrary."

Appellant argues that respondent was violating the two statutory requirements above referred to, and for this reason was not entitled to the benefit of any assumption that the drivers of other vehicles on the highway would observe the law applicable to them. Under the circumstances shown, respondent was entitled to the instruction as given. Nothing which the

evidence shows he did or failed to do deprived him of the right to assume that appellant's driver would obey the law, in the particulars referred to in the instruction.

We find no reversible error in the record, and the judgment appealed from is accordingly affirmed.

ROBINSON, C. J., BLAKE, SIMPSON, and JEFFERS, JJ., concur.

[1]Reported in 119 P. (2d) 664.