MAE K. LUNNY *vs.* JOSEPH PEPE.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 7th—decided May 16th, 1933.

*Walter E. Monagan,* for the appellant (defendant).

*Joseph A. Bergin,* for the appellee (plaintiff).

AVERY, J. The plaintiff brought this action to recover damages for injuries received by her in walking off a ramp in defendant's store. The court reached the conclusion that it was unsafe, and that the defendant was negligent in failing to maintain a guard rail or other protection to prevent persons from walking off

it; and that the plaintiff was herself free from contributory negligence. The defendant claims in this appeal that the facts found by the court did not justify these conclusions.

From the finding, it appears that at the time of the accident, May 16th, 1931, the defendant conducted a fruit and produce business at Waterbury. On entering the premises from the street, there was a large room, approximately sixty feet long and thirty feet wide, in which were displayed for sale vegetables which did not require subnormal temperature for their preservation. To the rear and left of this room was a large cooler, approximately sixteen feet square, used for the purpose of preserving articles requiring a low temperature. Near the rear wall of the main room leading from the level of its floor to that of the floor of the cooler, seven inches higher, was a ramp six feet wide and seven feet long, constructed of wood resembling in appearance the floor of the storeroom; it was free from defects due to wear and tear or any foreign substance. The room outside the ice box was an open space and the path to the box up the ramp was unmarked otherwise than by the grade of the latter. Its direction was at right angles from the path leading to its foot and the entrance of the store; and the natural course of a person leaving the ice box for the front of the store would be directly off the edge of the ramp. There was no guard rail or protection on either side to guide persons entering or leaving the cooler or to protect persons unacquainted with the premises. The outside room and cooler were lighted by artificial lights sufficient to show the condition of the floor, but did not readily disclose the fact that the ramp was there. There was a slight difference in light between the ice box and the premises outside. The entrance to the box was protected by a heavy insulated door on the out-

side which opened to the left, and away from a person leaving, and to the right, and against a person entering. In addition, there were two swinging doors, approximately two and one-half feet wide, which closed by means of a spring when a person passed through them. The plaintiff, who had never entered the ice box before, sent her servant to make a purchase, and some question having arisen as to the quality or price of the article, went through the outer room and entered the cooler. In so doing, she followed her servant to the rear of the outer room, then turned to the left and walked up the entire length of the ramp and into the ice box.

When the plaintiff had completed her purchase, the defendant opened the ice box door to assist her to make her exit, but in doing so he remained inside and the plaintiff proceeded to make her exit alone and unaided. The defendant held the swinging door on his right open. After the plaintiff had proceeded one or two steps, instead of continuing to the end she turned to her right and attempted to gain the street entrance by the shortest route. At the second step which she took, the heel of her foot and shoe were on the ramp and the ball and toe of her foot were off it, whereby she was thrown off her balance to the ground. The difference in height between the ramp and the floor at the point where she attempted to step off was approximately six inches. On the day of the accident, customers were in the ice box dealing with the defendant and his agents and servants, with his knowledge and consent.

The relationship of the plaintiff to that of the defendant was that of an invitee to whom he owed the duty of exercising reasonable care to keep the premises in reasonably safe condition. *Geoghegan* v. *Fox & Co., Inc.*, 104 Conn. 129, 134, 132 Atl. 408; *Ward* v.

*Avery,* 113 Conn. 394, 396, 155 Atl. 502. At the conclusion of the testimony and before argument, by agreement of counsel the trial judge visited the premises, it having been agreed that the condition thereof was substantially the same as at the time the plaintiff was injured, and had the benefit of a view in reaching his conclusion that the defendant was negligent in not properly guarding the ramp. The evidence obtained by the court through its personal inspection as to the conditions observable on the property was as truly to be considered by it in rendering a decision as if presented by the lips of witnesses. *Heublein, Inc.* v. *Second National Bank,* 115 Conn. 168, 175, 160 Atl. 898, 900.

The question whether or not the ramp was reasonably safe under all the circumstances was not a matter resting wholly upon the testimony of expert witnesses, but one upon which a non-expert might reasonably reach an opinion founded upon his personal knowledge. *Taylor* v. *Monroe,* 43 Conn. 36, 45; *Campbell* v. *New Haven,* 78 Conn. 394, 395, 62 Atl. 665; *Dean* v. *Sharon,* 72 Conn. 667, 674, 45 Atl. 963; *Ryan* v. *Bristol,* 63 Conn. 26, 38, 27 Atl. 309. Upon the facts found, especially as to the slant of the ramp, which the court concluded was so gradual as to justify a belief in one passing casually over it that it was level, the similarity in appearance of the floor of the ramp and that of the store, and the inconspicuous nature of the drop from the side of the ramp, we cannot hold that the conclusion that the condition was not reasonably safe was unwarranted; nor can error be predicated upon this finding with respect to the conclusion of the court that the plaintiff was in the exercise of due care.

There is no error.

In this opinion the other judges concurred.